FILED  Rev. 5/20

# United States District Court
Middle District of Florida
Fort Myers Division

2022 MAR 14  PM 4:00

CLERK, US DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS FLORIDA

Toddrick O. Henderson
*(In the space above enter the full legal name of the plaintiff)*

PROVIDED TO CHARLOTTE
CORRECTIONAL INSTITUTION
ON 3/10/22 FOR MAILING
BY [illegible]

-against-

Capt. Gahrmann, Sgt. Cotte,
and off. Meralis.

Case No. 2:22-cv-164-JES-NPM
*(To be filled out by Clerk's Office only)*

# COMPLAINT
*(Pro Se Confined Litigant)*

Jury Demand?
☑ Yes
☐ No

*(In the space above enter the full name(s) of the defendant(s). If you cannot fit the names of all of the defendants in the space provided, please write "see attached" in the space above and attach an additional sheet of paper with the full list of names. The names listed in the above caption must be identical to those contained in Section IV. Do not include addresses here.)*

---

**NOTICE**

Federal Rule of Civil Procedure 5.2 addresses the privacy and security concerns resulting from public access to electronic court files. Under this rule, papers filed with the court should *not* contain: an individual's full social security number or full birth date; the full name of a person known to be a minor; or a complete financial account number. A filing may include *only*: the last four digits of a social security number; the year of an individual's birth; a minor's initials; and the last four digits of a financial account number.

**Plaintiff need not send exhibits, affidavits, grievance or witness statements, or any other materials to the Clerk's Office with this complaint.**

## I. COMPLAINT

*Indicate below the federal legal basis for your claim, if known. This form is designed primarily for pro se confined litigants challenging the constitutionality of their conditions of confinement, claims which are often brought under 42 U.S.C. § 1983 (against state, county, or municipal defendants) or in a "Bivens" action (against federal defendants).*

- [x] 42 U.S.C. § 1983 (state, county, or municipal defendants)

- [ ] Action under *Bivens v. Six Unknown Federal Narcotics Agents*, 403 U.S. 388 (1971) (federal defendants)

## II. PLAINTIFF INFORMATION

__Henderson, Toddrick O.__
Name (Last, First, MI)                                Aliases

__V34268__
Identification #

__Charlotte Correctional Institution (FLA D.O.C)__
Place of Detention

__33123 Oil Well Rd.__
Institutional Address

__Punta Gorda__                    __Florida__           __33955__
County, City                        State                Zip Code

## III. STATUS

*Indicate whether you are a prisoner or other confined person as follows:*

- [ ] Pretrial detainee
- [ ] Civilly committed detainee
- [ ] Immigration detainee
- [x] Convicted and sentenced state prisoner
- [ ] Convicted and sentenced federal prisoner

## IV. DEFENDANT(S) INFORMATION

*Please list the following information for each defendant. If the correct information is not provided, it could result in the delay or prevention of service. Make sure that the defendant(s) listed below are identical to those contained in the above caption. Attach additional sheets of paper as necessary.*

Defendant 1: **FNU Gahrmann, (Captain)**
Name (Last, First)

**Captain assigned to Charlotte Correctional Inst.**
Current Job Title

**33123 oil well Rd**
Current Work Address

**Punta Gorda**     **Florida**     **33955**
County, City            State            Zip Code


Defendant 2: **FNU Cotte, (Sergeant)**
Name (Last, First)

**Sergeant assigned to Charlotte Correctional Inst.**
Current Job Title

**33123 oil well Rd**
Current Work Address

**Punta Gorda**     **Florida**     **33955**
County, City            State            Zip Code

Rev. 5/20

**Defendant(s) Continued**

Defendant 3: <u>FNU Meralis, (officer)</u>
Name (Last, First)

<u>Officer assigned to charlotte correctional Inst.</u>
Current Job Title

<u>33123 Oil well Rd</u>
Current Work Address

<u>Punta Gorda</u>     <u>Florida</u>     <u>33955</u>
County, City        State       Zip Code


Defendant 4: _____
Name (Last, First)

_____
Current Job Title

_____
Current Work Address

_____
County, City        State       Zip Code


[Additional Defendants Must Be Listed on a Separate Sheet Titled Section IV]

Rev. 5/20

## V. STATEMENT OF CLAIM

Place(s) of occurrence: The Middle district of florida

Date(s) of occurrence: December 24, 2020

State which of your federal constitutional or federal statutory rights have been violated:

Eighth constitutional Rights under the united states constitution.

*State here briefly the FACTS that support your case. See Fed. R. Civ. P. 8. Describe how each defendant was personally involved in the alleged wrongful actions, state whether you were physically injured as a result of those actions, and if so, state your injury and what medical attention was provided to you. All facts shall be set forth in separately numbered paragraphs. See Fed. R. Civ. P. 10(b).*

FACTS:

[What happened to you?]

1.) On December 24, 2020 between the hours of approxamatly 11:20 Am and 12:00 pm plantiff Henderson was housed in A-dormitary (A3105L). Sgt. Locks, Capt. Gahrmann, Sgt. Cotte, and officer Meralis entered the wing the plaintiff was housed in and they all approached the plaintiff's cell door. Sgt. Locks approached the plaintiff's cell first and told the plaintiff, your moving to F-dormitory submitt to handrestraints. The plaintiff replied let me pack my property in a asking manner. Sgt. Locks responded to the plaintiff's request with, no we will pack your property come and cuff up. At that point the plaintiff proceeded to get class A (prison policy for inmates to get fully blued before leaving their cell), Sgt. Locks saw the plaintiff getting dressed insted of cuffing up right away and told Capt. Gahrmann, he's refusing handrestraints and thats when Capt. Gahrmann approached the plaintiff's cell door.

2.) Once Capt. Gahrmann approached the plaintiffs cell door he pl-

aced his face to the cell door and wispered to the plain-tiff, your not going to run the team pussy, trying to provoke the plaintiff into getting sprayed with chemical agents... <span>continued on Attachment Section V pg 1</span>

> [Who did what?]

1.) Sgt. Cotte violated plaintiff Henderson's rights under the Eighth Amendments to the united states constitution by repeatedly punching him in the head an face and bending his joints trying to cause damage, while he (plaintiff) layed still on the ground in handcuffs backwards with legshackles on which was excessive force and cruel an unusual punishment and caused plaintiff Henderson pain, physical injury, suffering, and emotional distress.

2.) Officer Meralis violated plaintiff Henderson's rights under the Eighth Amendments to the united states constitution by repeatedly punching him in the back of the head bussing it open while he (plaintiff) layed still on the ground in handcuffs backwards with legshackles on which was excessive force and cruel and unusual punishment and caused plaintiff Henderson pain, physical injury, suffering, and emotional distress.

3.) Captain Gahrmann violated plaintiff Henderson's rights under the Eighth Amendments to the united states constitution by allowing two staffmembers to use excessive force on a inmate without giving a direct order to stop assulting the plaintiff being that he was the highest ranking staffmember present and responsible for the plaintiff and staffmembers saftey which was cruel and unusual punishment and... <span>continued on Attachment Section V (who did what)</span>

[Additional Facts Must Be Set Forth in an Attachment Titled Section V]

1) (Who did what?)

caused plaintiff Henderson pain, physical injury, suffering, and emotional distress.

**Was anyone else involved?**

No one else involved. All mentioned in who did what section.

## VI. ADMINISTRATIVE PROCEDURES

*WARNING:* **Prisoners** *must exhaust administrative procedures before filing an action in federal court about prison conditions. 42 U.S.C. § 1997e(a). Your case may be dismissed if you have not exhausted your administrative remedies.*

## VII. RELIEF

*State briefly what you want the court to do for you. Make no legal arguments. Cite no cases or statutes.*

Wherefore, plaintiff respectfully prays that this court enters Judgment: 1) Granting plaintiff Henderson a declaration that the ■ acts and omission described herein violate his rights under the constitution and laws of the United States, and, 2) A preliminary and permanent injunction ordering the staff at Charlotte C.I. cease their physical violations, cruel acts, and threats towards plaintiff Henderson, and 3) Granting plaintiff Henderson compensatory damages in the amount of $10,000 against each defendant, jointly and serverally.
4) Granting plaintiff Henderson punitive damages in the amount of $30,000 against each defendant, jointly and serverally.
5) Plaintiff also seeks a jury trial on all issues triable by jury.
6) Plaintiff also seeks recovery of his costs in this suit, and
7) Any additional relief this court deems just, proper, and equitable.

## VIII. LITIGANT'S LITIGATION HISTORY

*The "three strikes rule" bars a **prisoner** from bringing a civil action or an appeal in forma pauperis in federal court if that prisoner has "on three or more occasions, while incarcerated or detained in any facility, brought an action or appeal in a court of the United States that was dismissed on the grounds that it is frivolous, malicious, or fails to state a claim upon which relief may be granted, unless the prisoner is under imminent danger of serious physical injury." 28 U.S.C. §1915(g)*

### ALL LITIGANTS MUST ANSWER:

Have you to date brought any other lawsuits in state or federal court while a confined?   ☑ Yes   ☐ No

If yes, how many? __One__

Number each different lawsuit below and include the following:

- Name of case (including defendants' names), court, and docket number
- Nature of claim made
- How did it end? (For example, if it was dismissed, appealed, or is still pending, explain below.)

- 1983 civil suit - Staff members at Charlotte C.I. - 2:20-cv-267-FtM-38-MRM.
- Prison Abuse.
- Pending at this time - Dismissed as of January 2022

Rev. 5/20

## IX. PLAINTIFF'S DECLARATION AND WARNING

Under Federal Rule of Civil Procedure 11, by signing below, I certify to the best of my knowledge, information, and belief that this complaint: (1) is not being presented for an improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; (2) is supported by existing law or by a nonfrivolous argument for extending or modifying existing law; (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the complaint otherwise complies with the requirements of Rule 11.

I agree to provide the Clerk's Office with any changes to my address where case-related papers may be served. **I understand that my failure to keep a current address on file with the Clerk's Office may result in the dismissal of my case.**

*Plaintiff must sign and date the complaint and provide prison identification number and prison address.*

3/9/22
Dated

*[signature]*
Plaintiff's Signature

Henderson, Toddrick, O
Printed Name (Last, First, MI)

V34268
Identification #

Charlotte Correctional Inst.    Punta Gorda    FL    33955
Institutional Name              City            State  Zip Code

1) (What happened to you?)

and cell extracted. The plaintiff replied to the capt, Im not refusing handrestraints sir. At that point sgt. cotte approached the cell's door and opened the tray flap to place the plaintiff in handrestraints behind the back. When the handrestraints got secured onto the plaintiff he felt pain from them being too tight on his rists. The plaintiff complained to the staffmembers that were present about the tight handcuffs and got ignored completely.

3.) The plaintiff was pulled out of his cell and instructed to take a knee so that leg irons could be placed onto his ankles. The leg irons got secured onto the plaintiff's legs too tight as well so he complained about the restraints again and got ignored by these staffmembers. (Please note that this all happened on A-dormitorys audio and video on the stated date and time). The plaintiff assumed that the negitive treatment by these staffmembers was a attempt to provoke him into negitive actions so that he would be handled physically for being disorderly, so the plaintiff just complied with all orders given and was excorted out of wing 3, and then out of the exit door of A-dormitory (please notice on A-dormitory's audio and video that there was no handheld camara being used at the time of exiting wing 3, and A-dormitory, and the plaintiff was fully blued with a face mask secured onto his face while already secured in handrestraints behind his back with shackles on an was unharmed physically. (Note the face mask is improbable to remove by a inmate in handrestraints backwards due to having to be tied behind the ears and head by 4 strings attached to the mask).

4.) Once the plaintiff and the excorting staffmembers (capt. Grahrmann, sgt. cotte, and officer miralis) began walking to F-dormitory for the rehousing of the plaintiff, the plaintiff noticed that he had to walk slow because if he moved to fast he'd feel pain in his ankles from the shackles being too tight. So he walked at

2.) Attachment section
(What happened to you?)

a slower pace to stop the pain from reoccurring. Sgt. Cotte was holding the plaintiff's left arm, and officer Meralis was holding the plaintiffs right arm while Capt. Gahrmann walked beside the three a step or two behind.

5.) As the plaintiff and the escorting staffmembers walked past the medical building Sgt. Cotte told the plaintiff, walk faster inmate. The plaintiff replied to this order by saying, I cant the shackles are too tight on my ankles its causing pain and will cut my skin open. Sgt. Cotte responded to the plaintiff by pushing him foward as if he was trying to force the plaintiff to walk faster. The plaintiff look at him (Sgt. Cotte) and asked, why are you pushing me I cant walk any faster. Sgt. Cotte replied to the plaintiff with, stop being disorderly inmate. The plaintiff knew that this was a attempt to provoke him into negitive actions so he (plaintiff) replied with, Im not being disorderly. Sgt. Cotte then replied to the plaintiff with shut up nigger. The plaintiff responded by looking at the seargent and saying, I thought racism was over, Sgt. Cotte replied, it is until dumb one's like you come around. The plaintiff replied, Im going to write a grievance about that.

6.) As the escort proceeded to F-dormitory the plaintiff spoke to Capt. Gahrmann about what had just been said by his staffmember. The plaintiff asked Capt. Gahrmann, captain did you hear your sargeant being racist? Capt. Gahrmann replied, you wouldnt have to worry about that if you didnt come from section 8 and had the whole nighborhood going in and out of your mom's house. The plaintiff replied, Im going to write a grievance on both of you.

7.) When the plaintiff informed the staffmember that he would be writing a grievance Sgt. Cotte said, inmate stop being disorderly and pushed him (plaintiff)

Attachment section
3) (what happened to you?)

foward again. The plaintiff did not risist but stated, Im walking fast as I can without hurting myself the shackles are too tight Im not walking any faster. At that moment sgt. cotte put his right leg in front of the plaintiffs legs and pulled his left arm towards the ground in a successful attempt to slam him (plaintiff), and officer Meralis helped by pushing the plaintiff to give sgt. cotte the momentum he needed to complete the slam, which was unnecessary because the plaintiff was going and went down willingly so that he wouldn't get hurt due to being in restraints (handcuffs behind the back and leg irons shackled onto his ankles).

8.) Once the plaintiff was on the ground he laid still not to be disorderly and cause the staffmembers to hurt him. Sgt. cotte and officer Meralis then proceeded to punch the plaintiff with closed fist's repeatedly in the face an back of the head. The plaintiff just laid there on the cement ground unable to stop these two staffmembers or be any type of threat to them due to being in handcuffs backwards with shackles on.

9.) After the first two or three punches the plaintiff said in a pleading tone twice, allright Im not moving stop punching me. Sgt. cotte replied, Shut up and punched the plaintiff in the left eye three times then started trying to lift and slam the plaintiffs head on the concreat ground. Sgt. cotte then started trying to bend the plaintiffs left pinky backwards and couldn't do so because the plaintiff closed his fingers in tight so they couldn't be damaged or broken. Sgt. cotte then started bending both of the plaintiffs rist's inwards one at a time to an unnatural angle in the handcuffs which caused extreme pain.

10.) The plaintiff was not being disorderly, fighting back, or risisting. The plaintiff was no threat to th

Attachment Section V.
(What happened to you?)

4)

ese staffmembers due to him laying on the ground still while in handcuffs behind the back, with leg shackles on his ankles being restrained an beaten by two staffmembers, (male), yet was punched repeatedly and assulted by those two staffmembers.

11.) Captain Gahrmann just looked on at this act of excessive force for approximatly 45 seconds before he ordered the two staffmembers to stop. The plaintiff then was pulled off the ground by Sgt. Cotte and officer Meralis and then was being almost dragged towards F-dormitory. A sargeant ran out of G-dormitory with a handheld camara on and recording. (Notice on the video recording by the handheld camara the plaintiff was clearly beaten because of the footage showing him covered in blood all from him (plaintiff) and bleeding from his head and face scraps from the concreat. The plaintiff was unharmed in any way and secured in handcuffs behind the back with shackles on his ankles approximatly 2 minutes before the handheld camara started recording. The plaintiff can clearly be seen on A-dormitory's audio and video, unharmed and secured, but was a bloody mess once the handheld camara started recording.

12.) The plaintiff suffered serious injury that was more than de minimis from this act of excessive force. This clearly was not standard use of force. The plaintiff had to get stitches in the back of his head to close a deep gash caused by repeated punches to the back of the head, hands and fists x-rayed from being brused and swollen, face cleaned and sanitized from being scrapped and banged on the concreat and punched repeatedly, and left eye socket checked several times after x-rayed because of constant pain after the swelling and brusing went down from being swollen,

5) Attachment Section IV
(what happened to you?)

closed, and black. The plaintiff's right rist is still damaged and painful to use when lifting things over a few pounds as of this 28th day of Febuary 2022.

13.) This was excessive force for several resons. There is a claim by sgt. cotte to justify their use of force. sgt. cotte claims that the plaintiff was manipulating his mask while building up salvia as if he were going to spit on a staffmember which was highly improbable to do (manipulate mask and spit) due to being in handcuffs behind the back with leg shackles on the ankles while two staffmembers have grips on both arms during a excort. Also the plaintiffs face mask had to be secured before leaving his cell due to covid restrictions, and to secure a mask provided by the state onto the face a inmate has to tie 4 attached strings behind the ears and head. If the plaintiff did try to manipulate his face mask while building up salvia in a threatening manner use of force was ment to be used to restore order and disipline. These two staffmembers caused a wanton infliction of pain and injuries. If the plaintiff being disorderly were a true claim, these two staffmembers never considered how much force was needed to restore order, or never attempted to use as little force as possible. The plaintiff was already on the ground secured in handrestraints behind the back with leg shackles on his ankles with two male staffmembers on top of him repeatedly punching him and having his head bangged on the ground and joints bent. This use of force was meant to cause harm rather then restore order.

14.) Attached is a copy as Exhibit A of the approved grievance as proof of exhaustion of administrative remidie. The grievance was approved and agreed on that the plaintiff was a victim of excessive force and cruel and unusual punishment (Exh A pg 3 lines 91-93.) (grievance explaining event detailed)

## PART B - RESPONSE

| HENDERSON, TODDRICK | V34268 | 2102-510-039 | CHARLOTTE C.I. | A3204L |
|---|---|---|---|---|
| NAME | NUMBER | FORMAL GRIEVANCE LOG NUMBER | CURRENT INMATE LOCATION | HOUSING LOCATION |

Your request for Administrative Remedy or Appeal has been received and evaluated.

The issue of your complaint was referred to Security for appropriate action. Upon completion of necessary action, information will be provided to appropriate administrators for final determination and handling. BE ADVISED THIS MAY OR MAY NOT RESULT IN A PERSONAL INTERVIEW WITH YOU.

As action has been initiated, you may consider your appeal APPROVED from that standpoint. This does not constitute substantiation of your allegations.

_____  
SIGNATURE AND TYPED OR PRINTED NAME OF EMPLOYEE RESPONDING

_____  
SIGNATURE OF WARDEN, ASST. WARDEN, OR SECRETARY'S REPRESENTATIVE

24-Feb-2021  
DATE

**MAILED DATE:**

FEB 24 2021

INMATE GRIEVANCE OFFICE

**FLORIDA DEPARTMENT OF CORRECTIONS**
**REQUEST FOR ADMINISTRATIVE REMEDY OR APPEAL**

☐ Third Party Grievance Alleging Sexual Abuse

TO: ☐ Warden    ☑ Assistant Warden    ☐ Secretary, Florida Department of Corrections

From or IF Alleging Sexual Abuse, on the behalf of:

| Henderson | Toddrick | O. | V34268 | CHR. C.I. |
|---|---|---|---|---|
| Last | First | Middle Initial | DC Number | Institution |

RECEIVED Feb 04 2021 By _____

2102-510-039

### Part A – Inmate Grievance

1. This is a complaint on Capt. Gahrmann, Sgt. Cotte, and Officer Meralis for excessive force. I wrote a inform-
2. al grievance about this matter on 12-28-20 and never got a reply to it. I wrote a request form to the grie-
3. vance office about the response to it (informal grievance) and was informed that it was denied and returned with-
4. out action, but I never recieved a copy of it. I wrote a formal grievance on 1-25-21 as a appeal to the
5. informal grievance (12-28-20) and called F-dormitory's (F2102) audio and video as evidence that I did infact turn in
6. that informal grievance on 12-28-20 and never got a respons within the 15 day time limit per chpt 33.103.005; I
7. got a respons to my formal grievance filed on 1-25-21 and it was returned without action, but I can re-file
8. it (formal grievance) to be in compliance (see grievance log #2101-510-159). The following facts in detail is w-
9. hat occured that makes me a victim of excessive force which violates my Eighth Amendment rights und-
10. er the United States Constitution. (Please note that I do call the audio's and video's as evidence to support my com-
11. plaint on the date's, time's, and locations mentioned herein.
12. On December 24, 2020 between the hours of approximatly 11:20AM and 12:00PM I was housed in A-dormitory (A3105). Sgt
13. Locks, Capt. Gahrmann, Sgt. Cotte, and Officer Meralis entered the wing I was in and Sgt. Locks approached my cell first
14. and told me to submitt to handrestraints I'm moving to F-dormitory. I replied let me pack my property. Sgt. Locks
15. replied no we will pack your property come cuff up. At this point I proceeded to get class A and Sgt. Locks
16. told Capt. Gahrmann I was refusing handrestraints and Capt. Gahrmann approached my cell and said to me, your n-
17. ot going to run the team pussy (got cell cracked). I replied I'm not refusing handrestraints sir. At this point Sgt.
18. Cotte placed me in handcuffs behind my back but I complained because they were way too tight and
19. he ignored my complaint. I was pulled out of the cell and leg irons (shackles) were placed on my ankles also
20. to tight I complained about this on audio and video and got ignored by all staff members present.
21. I took this negitive manner of ignoring me as a attempt to provoke me into being disordirly so
22. I just complied and was escorted out of A dormitory (wing 3). (Please note that there was no h-
23. andheld camera at this time but notice on A-dormitory's audio and video that I left the wing class A w-
24. ith my ~~face mask~~ secured on my face (provided due to covid-19) and I was already restrained by handcuffs
25. behind my back and leg irons on my ankles, and I was unharmed physically. Once we, continued on pg 2

| 2-3-21 | | V34268 |
|---|---|---|
| DATE | SIGNATURE OF GRIEVANT AND D.C. # |

*BY SIGNATURE, INMATE AGREES TO THE FOLLOWING # OF 30-DAY EXTENSIONS:  00 / [signature]
#     Signature

### INSTRUCTIONS

This form is used for filing a formal grievance at the institution or facility level as well as for filing appeals to the Office of the Secretary in accordance with Rule 33-103.006, Florida Administrative Code. When an appeal is made to the Secretary, a copy of the initial response to the grievance must be attached (except as stated below).

When the inmate feels that he may be adversely affected by the submission of a grievance at the institutional level because of the nature of the grievance, or is entitled by Chapter 33-103 to file a direct grievance he may address his grievance directly to the Secretary's Office. The grievance may be sealed in the envelope by the inmate and processed postage free through routine institutional channels. The inmate must indicate a valid reason for not initially bringing his grievance to the attention of the institution. If the inmate does not provide a valid reason or if the Secretary or his designated representative determines that the reason supplied is not adequate, the grievance will be returned to the inmate for processing at the institutional level pursuant to F.A.C. 33-103.007 (6)(d).

### Receipt for Appeals Being Forwarded to Central Office

Submitted by the inmate on: _____ (Date)    Institutional Mailing Log #: _____    _____ (Received By)

DISTRIBUTION:
INSTITUTION/FACILITY           CENTRAL OFFICE
INMATE (2 Copies)                     INMATE
INMATE'S FILE                             INMATE'S FILE - INSTITUTION/FACILITY
INSTITUTIONAL GRIEVANCE FILE    CENTRAL OFFICE INMATE FILE
                                                   CENTRAL OFFICE GRIEVANCE FILE

DC1-303 (Effective 11/13)    Incorporated by Reference in Rule 33-103.006, F.A.C.



26. me and the staff members escorting me which was, capt. Grahrmann, sgt. cotte, and officer
27. Meralis) started walking I noticed I had to slow pace my walk so that my ankles
28. wouldn't hurt due to the leg irons being to tight. Sgt. cotte was holding my left arm and
29. officer Meralis was holding my right arm while capt. Grahrmann walked beside us. As we
30. got just past the medical building sgt. cotte told me to walk faster inmate. I replied
31. to him that I couldn't the shackles are to tight on my ankles. At my response sgt. cotte
32. pushed me foward slitly as if he was trying to force me to speed up walking. I
33. looked at him (sgt cotte) and asked him, why are you pushing me I can't walk any fas-
34. ter. sgt. cotte replied to me with, inmate stop being disorderly. I took that as another a-
35. ttempt to provoke me into disorderly actions. I replied I'm not being disorderly. At
36. that point sgt. cotte replied to me by saying, shut up nigger. I replied to him
37. by saying, whats up with that, I thought racism was over. sgt. cotte replied it is
38. until dumb ones like you come around. I responded to him by saying, I'm going
39. to write a grievance about that. I spoke to capt. Grahrmann and said,
40. captain did you hear your sargent being racist? capt. Grahrmann replied to my
41. question with, you wouldn't have to worry about that if you didn't come
42. from section 8 and had the whole nighborhood going in and out your
43. mom's house. I replied, I'm going to write a grievance on both of you.
44. At that point sgt. cotte said to me, inmate stop being disorderly and
45. pushed me foward again. I replied to him by saying I'm walking as
46. fast as I can the shackles are too tight I'm not going to walk any
47. faster. At that moment sgt. cotte put his right leg in front of mine
48. and pulled my left arm downwards towards the ground in a attempt to slam me and
49. officer Meralis helped by pushing me to give sgt cotte the momentum he needed
50. to slam me which was unnecessary because I went down willingly so that I w-
51. ouldn't get hurt due to me being in restraints (handcuffed backwards and shackles
52. on my ankeles). once I was on the ground I layed still not being disorderly
53. and thats when sgt cotte and officer Meralis proceeded to punch me
54. repeatedly in the face and back of my head. I was just laying th-
55. ere on the ground unable to stop them or be any type of threat to
56. them. I said to these staff members twice, alrite I'm not resisting
57. stop punching me. Sgt. Cotte replied to me with shut up and punched
58. me in the left eye three times then started trying to lift and
59. slam my head on the concreat ground. sgt. cotte then started

continued on

(pg 3)

60. trying to bend my left pinky backwards and my rist's (both) inward to
61. an unnatural angle which caused extreme pain. I was not trying to fight back
62. or resist and was not a threat to these staff members due to me laying
63. still as possible while in hand restraints behind my back and having leg irons
64. on. Yet I was still punched repeatedly and assaulted. Captain Gahrmann just
65. looked on at this act of excessive force for approximatly 45 seconds before
66. he ordered these two staff members to stop. At that moment a Sargeant
67. ran out of G-dormitory with a handheld camara on and recording, and if you
68. will notice on that handheld camara, I was beaten and a bloody mess and I w-
69. as not like that when I just left A-dormitory approximatly 2 minutes ago. I
70. suffered serious injuries from this use of excessive force. I had to get stitches
71. (several) in the back of my head and x-rays on my hand and head because my face
72. was swollen (left eye socket) and my rist's and left pinky was badly damaged. This
73. act was excessive force for several resons. There is a claim that I was manipulati-
74. ng my face mask while building up saliva as if I were going to spit on a staffmem-
75. ber which is impossible somewhat because I was in handcuffs behind my back
76. with no way to reach my mask. I understand that if I did try to or act like I was go-
77. ing to spit on a staffmember then a use of force is suppose to be used if necessary to re-
78. store order and disipline. Capt. Gahrmann was the highest ranking staffmember during th-
79. is escort and was responsible for the staffmembers and my saftey. A use of force
80. is to be performed for restoring order or disipline not be meant to cause harm. Thes-
81. e two staffmembers caused a wanton (un-called for) infliction of pain. And if me being
82. disorderly was a true claim these staff members are still guilty of excessive
83. force because they never considered how much force was needed or never att-
84. empted to use as little force as possible. I was in hand restraints behind
85. my back and had shackles (leg irons) on my ankles already, punching me
86. repeatedly while I'm already restrained on the ground is not rest-
87. oring order or disipline, and banging or attempting to bang my head on
88. the ground than twisting my joints to unnatural angles is not restoring
89. disipline or order by use of force. This was excessive force I suffered
90. serious injuries from. This was cruel and unusual punishment and excessive
91. force which violates my Eighth Amendments rights under the United
92. States constitution. I am seeking agreement that I was a victim of
93. excessive force and for these staffmembers to be delt with accordingly.