```
                UNITED STATES DISTRICT COURT
                 MIDDLE DISTRICT OF FLORIDA
                     FORT MYERS DIVISION
```

TODDRICK O. HENDERSON,

       Plaintiff,

v.                          Case No: 2:22-cv-164-JES-NPM

FNU GAHRMANN, FNU COTTE, and
FNU MERALIS,[1] Officer,

       Defendants.
_____/

## OPINION AND ORDER

Plaintiff Toddrick O. Henderson, a prisoner of the Florida Department of Corrections, initiated this action by filing a *pro se* civil rights complaint alleging that officers at Charlotte Correctional Institution used excessive force against him. (Doc. 1). The Court now considers a motion to dismiss filed by Defendant Gahrmann. (Doc. 42). Henderson responded to the motion (Doc. 43), and it is ripe for review.

After carefully considering the pleadings, the Court grants in part and denies in part Defendant Gahrmann's motion to dismiss. Defendant Garhmann must file an answer to the remaining claim within thirty days.

---

[1] Henderson identified his defendant as FNU Meralis. (Doc. 1 at 4). The defendants note that the correct name of this defendant is "FNU Morales-Roman." (Doc. 42 at 1).

**I.     Pleadings**

**A.    Complaint**

On December 24, 2020, Henderson was approached by the three defendants, Officers Garhmann, Cotte, and Moralis-Roman, who told him that he was moving to F-dormitory. (Doc. 1 at 5).[2] He was ordered to submit to hand restraints. (Id.) Henderson initially complained, and Defendant Gahrmann approached his cell door and told him that he (Henderson) did not run the prison. (Id. at 5-6). Henderson then complied, but Defendant Cotte applied the hand restraints too tightly. (Id. at 12). Henderson complained about the tight restraints, but was ignored. (Id.) The defendants removed Henderson from the cell and applied leg restraints, again too tightly. (Id.) Henderson complied with all orders given. (Id.) Henderson had to walk slowly because of the tight leg restraints. (Id. at 12-13). Defendant Cotte told Henderson to walk faster. (Id. at 13). Henderson explained that he could not do so because the leg restraints were too tight. (Id.) Defendant Cotte pushed him forward, and when Henderson complained, Defendant Cotte told him to stop being disorderly. (Id.) Henderson told him that he was not being disorderly, and Defendant Cotte uttered

---

[2] These facts are taken from Plaintiff's complaint. (Doc. 1). The Court accepts the veracity of these factual allegations when considering a motion to dismiss. See Williams v. Bd. of Regents, 477 F.3d 1282, 1291 (11th Cir. 2007).

a racial slur. (Id.) Henderson told Defendant Cotte that he planned to write a grievance about the slur. (Id.) After they reached F-dormitory, Henderson told Defendant Gahrmann about Defendant Cotte's use of the slur. (Id.) Defendant Gahrmann just answered that if Henderson "didn't come from section 8 and had the whole neighborhood going in and out of your mom's house," he wouldn't have to worry. (Id.) Henderson then told Defendant Gahrmann that he would write a grievance against him as well. (Id.)

Defendant Cotte told Henderson to stop being disorderly (even though Henderson was not resisting), but Henderson explained to Defendant Cotte that he could not walk faster because of the tight leg restraints. (Doc. 1 at 14). Defendants Cotte and Morales-Roman then pushed Henderson to the ground. (Id.) Once on the ground, Henderson lay still while Defendants Cotte and Morales-Roman punched him with closed fists on the face and back of the head. (Id.) Henderson told them that he wasn't going to move and asked them to stop punching him, but Defendant Cotte told him to shut up and punched him in the left eye three times. (Id.) He then attempted to slam Henderson's head on the concrete. (Id.) Defendant Cotte also tried to bend Henderson's fingers and bent his wrist until it hurt. (Id.) Henderson alleges that he was not being disorderly or fighting back. (Id. at 14-15). Defendant

3

Gahrmann watched the use of force for about 45 seconds before ordering the staff members to stop. (Id. at 15).

Henderson asserts that he suffered swelling and bruising from the incident as well as a gash that required stitches and a wrist injury that still makes it difficult for him to lift more than a few pounds. (Doc. 1 at 15-16). He raises claims of excessive force against Defendants Cottes and Morales-Roman and a claim for failure-to-intervene against Defendant Gahrmann. (Id. at 6). He seeks monetary damages and injunctive relief. (Id. at 9).

**B. Motion to Dismiss**

Defendant Gahrmann has filed a motion to dismiss the complaint. (Doc. 42) He asserts that Henderson's official-capacity claims are barred by Eleventh Amendment immunity and that his individual-capacity claims are barred by qualified immunity. (Id. at 4-7). Gahrmann asserts that Henderson has not stated a claim against him because Henderson has not alleged that Gahrmann knew that Henderson faced a substantial risk of serious harm or that—even if there was an excessive use of force—Defendant Gahrmann failed to respond in an objectively reasonable manner. (Id. at 8). Gahrmann argues that Henderson's claims are barred under Heck v. Humphrey, 512 U.S. 477 (1994) because Henderson was disciplined for the incident that led to the use of excessive force and has not demonstrated that his disciplinary charge and conviction have been invalidated. (Id. at 9-10). Finally, Gahrmann asserts that

4

Henderson has not stated a claim for injunctive or declaratory relief. (Id. at 11).

In response, Henderson generally reasserts his entitlement to relief. (Doc. 43).

## II.  Standards of Review

### A.  Motion to Dismiss

In evaluating a motion to dismiss, this Court accepts as true all allegations in the complaint and construes them in the light most favorable to the plaintiff. Jackson v. BellSouth Telecomms., 372 F.3d 1250, 1262-63 (11th Cir. 2004). Further, this Court favors the plaintiff with all reasonable inferences from the allegations in the complaint. Stephens v. Dep't of Health & Human Servs., 901 F.2d 1571, 1573 (11th Cir. 1990) ("On a motion to dismiss, the facts stated in [the] complaint and all reasonable inferences therefrom are taken as true."). However, the Supreme Court has explained that factual allegations must be more than speculative:

> While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level.

Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (internal citations and quotation marks omitted). Further, courts are not

"bound to accept as true a legal conclusion couched as a factual allegation." Papasan v. Allain, 478 U.S. 265, 286 (1986).

In Ashcroft v. Iqbal, 556 U.S. 662 (2009), the Supreme Court, referring to its earlier decision in Twombly, set forth a two-pronged approach to evaluate motions to dismiss. First, a reviewing court determines whether a plaintiff's allegation is merely an unsupported legal conclusion that is not entitled to an assumption of truth. Next, it determines whether the complaint's factual allegations state a claim for relief that is plausible on its face. Iqbal, 556 U.S. at 678-79. Evaluating a complaint under Rule 12(b)(6) is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Id. at 679.

  **B.** **Excessive Force**

The core inquiry in an Eighth Amendment excessive force claim is whether force was applied in a "good faith effort to maintain or restore discipline" or "maliciously or sadistically" to cause harm. Whitley v. Albers, 475 U.S. 312, 320 (1986). The following must be considered to answer that question: (1) the need for force; (2) "the relationship between the need and the amount of force that was used"; (3) "the extent of the injury inflicted"; (4) "the threat to the safety of staff and inmates"; and (5) "any efforts made to temper the severity" of the force. Cockrell v. Sparks, 510 F.3d 1307, 1311 (11th Cir. 2007).

6

A failure-to-intervene claim is also analyzed under the Eighth Amendment, but under a different legal standard than an excessive force claim. Prison correctional officers may be held directly liable under section 1983 if they fail to intervene, or are deliberately indifferent, when a constitutional violation occurs in their presence, and they are in a position to intervene. Ensley v. Soper, 142 F.3d 1402, 1407 (11th Cir. 1998).

### III. Discussion

**A.  Henderson's official capacity claims are dismissed.**

Henderson does not state whether he sues the defendants in their individual or official capacities. Official-capacity claims are "only another way of pleading an action against an entity of which an officer is an agent." Kentucky v. Graham, 473 U.S. 159, 165–66 (1985) (quoting Monell v. Dep't of Soc. Servs., 436 U.S. 658, 690 n.55 (1978)). Thus, Henderson's official-capacity claims against the defendants—all of whom are employed by the Florida Department of Corrections (FDOC)—are essentially claims against the FDOC.

The Eleventh Amendment generally bars suits for damages by an individual against a state, its agencies, and its employees, unless Congress has abrogated the state's sovereign immunity or the state has consented to suit. Schultz v. Alabama, 42 F.4th 1298, 1314 (11th Cir. 2022). Congress has not abrogated the states' sovereign immunity in damages actions under section 1983. Will

7

v. Mich. Dep't of State Police, 491 U.S. 58, 67–68 (1989). Because the FDOC is entitled to Eleventh Amendment immunity, Henderson's official-capacity claims for damages are dismissed. See Leonard v. Fla. Dep't of Corr., 232 F. App'x 892, 894 (11th Cir. 2007) ("The Department of Corrections is not amenable to suit because it has immunity under the Eleventh Amendment." (citing Stevens v. Gay, 864 F.2d 113, 115 (11th Cir. 1989))).

The Eleventh Amendment does not necessarily bar claims for prospective injunctive relief against the defendants in their official capacities. See Will, 491 U.S. at 71, n.10 ("Of course a state official in his or her official capacity, when sued for injunctive relief would be a person under § 1983 because official-capacity actions for prospective relief are not treated as actions against the State.") (internal quotation removed). Here, in addition to damages, Henderson seeks "a preliminary and permanent injunction ordering the staff at Charlotte Correctional Institution [to] cease their physical violations, cruel acts, and threats toward Plaintiff Henderson[.]" (Doc. 1 at 9). However, this is merely a request for an "obey-the-law" injunction, which are disfavored in the Eleventh Circuit "because they lack specificity and deprive defendants of the procedural protections that would ordinarily accompany a future charge of a violation" of the law. S.E.C. v. Goble, 682 F.3d 934, 949 (11th Cir. 2012); Elend v. Basham, 471 F.3d 1199, 1209 (11th Cir. 2006) ("It is well-

8

established in this circuit that an injunction demanding that a party do nothing more specific than 'obey the law' is impermissible."); Burton v. City of Belle Glade, 178 F.3d 1175, 1201 (11th Cir. 1999) ("As this injunction would do no more than instruct the City to 'obey the law,' we believe that it would not satisfy the specificity requirements of [Federal Rule of Civil Procedure] 65(d) and that it would be incapable of enforcement."). Therefore, because Henderson's official-capacity claims for injunctive relief lack redressability, they are dismissed.

### B. Henderson has stated an individual-capacity claim against Defendant Gahrmann.

In his motion to dismiss, Defendant Gahrmann generally argues that Henderson has not stated a claim on which relief can be granted because he responded to Officer Cotte's and Officer Morales-Roman's use-of-force in an objectively reasonable manner. (Doc. 42 at 8). Defendant Gahrmann also asserts entitlement to qualified immunity on Henderson's failure-to-protect claim. (Id. at 5-7).

Henderson alleges that he was gratuitously beaten by two corrections officers and that Defendant Gahrmann waited 45 seconds before ordering them to stop. At this stage of litigation, these assertions are accepted as true and state a claim. A determination of whether the other officers' use of force was excessive; whether Henderson actually faced a risk of harm that Defendant Gahrmann

was subjectively aware of (and was in a position to intervene); and whether Defendant Gahrmann's response was objectively reasonable involve factual considerations that can be developed through discovery and raised in a motion for summary judgment or at trial. Therefore, the failure-to-intervene claim against Defendant Gahrmann will not be dismissed for failing to state a claim on which relief may be granted.

Likewise, Defendant Gahrmann is not entitled to qualified immunity at this stage of litigation. It is well established in this circuit that when an officer, whether supervisory or not, "fails or refuses to intervene when a constitutional violation such as an unprovoked beating takes place in his presence, the officer is directly liable under Section 1983." Byrd v. Clark, 783 F.2d 1002, 1007 (11th Cir. 1986); Helm v. Rainbow City, Alabama, 989 F.3d 1265, 1272 (11th Cir. 2021) ("The principle that an officer must intervene when he or she witnesses unconstitutional force has been clearly established in this Circuit for decades.").

### C. Henderson's failure-to-intervene claim is not barred under Heck v. Humphrey.

Defendant Gahrmann asserts that Henderson was disciplined for the incident at issue in this case and that he has not demonstrated that the disciplinary charge and conviction have been invalidated. (Doc. 42 at 10). He notes that in Heck v. Humphrey, 512 U.S. 477 (1994), the Supreme Court held that a prisoner's claims for damages

are not cognizable under 42 U.S.C. § 1983 if " 'a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence.' "  (Doc. 42 at 10 (quoting Heck, 512 U.S. at 487)).  Indeed, the Heck rule—as extended by Edwards v. Balisok to apply to prison disciplinary procedures—provides that an imprisoned plaintiff's case may not proceed if "a judgment in favor of the plaintiff would necessarily imply the invalidity" of a disciplinary report.  Balisok, 520 U.S. 641, 643 (1997) (quoting Heck, internal quotation marks omitted).

Defendant Gahrmann argues that Henderson "voluntarily steered" his suit into Heck territory by "specifically alleging he did not provoke the actions of FNU Cotte and FNU Morales-Ramon, when he was in fact disciplined for doing exactly that."  (Doc. 42 at 9, 10).  Indeed, the disciplinary report attached to the motion to dismiss alleges that Henderson was attempting to spit at the officers when they used force against him.  (Doc. 42-1).  However, in Dixon v. Hodges (cited by Defendant Gahrmann), the Eleventh Circuit clarified "the inconsistent-factual-allegation gloss on Heck" by explaining that "[w]hen a plaintiff alleges a fact that, if true, would conflict with the earlier punishment, *but that fact is not necessary to the success of his § 1983 suit*, the Heck bar does not apply."  887 F.3d 1235, 1239 (11th Cir. 2018)(emphasis added).

11

The gravamen of Henderson's section 1983 complaint is that the officers used excessive force against him. The success of his claim is not <u>necessarily</u> dependent on whether Henderson attempted to spit on the officers before the use of force. In fact, the disciplinary hearing established that he did. But an initial use of force need not be unjustified to be excessive. It is logically possible that Henderson attempted to spit on Officer Cotte and Officer Morales-Roman <u>and</u> that their response to his actions was either initially excessive or continued after Henderson was subdued (or both). Because " 'there is a version of the facts which would allow the [disciplinary report] to stand,' alongside a successful section 1983 suit, <u>Heck</u> does not control." <u>Dixon</u>, 887 F.3d at 1240 (quoting <u>Dyer v. Lee</u>, 488 F.3d 876, 883 (11th Cir. 2007)).

Accordingly, neither <u>Heck</u> nor <u>Balisok</u> bar this lawsuit against Defendant Gahrmann in his individual capacity.

### IV. Conclusion

Accordingly, it is **ORDERED**:

1. The Clerk is **DIRECTED** to correct the spelling of Defendant FNU Morales-Roman's name (formerly Defendant FNU Meralis) in CM/ECF.

2. Defendant Gahrmann's motion to dismiss (Doc. 42) is **GRANTED in part** and **DENIED in part**. The motion is granted as it

relates to Henderson's official-capacity claims, but otherwise denied.

    2.   Defendant Garhmann shall file an answer to the complaint within **THIRTY (30) DAYS** from the date on this Order.

    **DONE AND ORDERED** in Fort Myers, Florida on this __29th__ day of January 2024.

_____
JOHN E. STEELE
SENIOR UNITED STATES DISTRICT JUDGE


SA: FTMP-2
Copies: Toddrick O. Henderson, counsel of record